590 So.2d 1114 (1991)
LINDOS RENT A CAR and James D. Grant, Appellants,
v.
Constance STANDLEY, Appellee.
No. 90-1688.
District Court of Appeal of Florida, Fourth District.
December 27, 1991.
Richard A. Sherman and Rosemary B. Wilder, Richard A. Sherman, P.A., Fort Lauderdale, for appellants.
Philip M. Burlington, Edna L. Caruso, P.A., and Stuart A. Young of Stuart A. Young, P.A., West Palm Beach, for appellee.
PER CURIAM.
Appellee, Constance Standley, sued appellants, Lindos Rent A Car and James Grant, for injuries sustained in a motor vehicle accident. At trial, defense counsel for appellants, in opening statement, referred to neither party's having received a traffic citation. The trial court denied appellee's motion for mistrial and gave a curative instruction. After a five day trial, the jury found appellants seventy-five percent negligent and awarded appellee $112,000. The trial court then ordered a new trial on liability and damages, after a hearing on appellee's post-trial motion for a mistrial, due to the prejudicial impact of the reference to no traffic citation being issued.
Appellants appealed, contending the trial court abused its discretion in ordering a new trial and in ordering a new trial on *1115 both liability and damages rather than just on liability. We disagree and affirm.
The accident occurred at the intersection of Federal Highway and Ocean Avenue in Boynton Beach. Appellee, traveling north on Federal Highway was approaching an intersection where appellant was facing south, prepared to make a left-hand turn. The only eyewitness, other than the parties, testified that appellee was going about thirty-five miles per hour, the speed limit. He saw her brake violently just as appellant started turning, which was right at the time appellee reached the crosswalk of the intersection.
Appellee's small truck was pushed in, the hood sprung up, and a fender buckled. Appellant told the only eyewitness that he probably should not have turned when he did, although appellant refuted any fault at trial.
At trial the most highly debated issue was the extent of injuries that appellee sustained as a result of the accident. Appellee claimed $800,000 in damages. She testified that as she attempted evasive measures, her body twisted into the steering wheel and then on impact flipped back against the window. Appellee alleged that she suffered from an atypical whiplash, muscle spasms, a herniated disc which was treated with surgery, and depression.
Appellants introduced lengthy testimony to indicate that a majority of appellee's physical complaints emanated from a previous horseback riding fall. Moreover, appellant's testimony was to the effect that the damages were exaggerated  that the thirty-seven year old appellee, hospitalized for three days following the injury, exaggerated her bump on the head to include surgery three months after the accident, memory loss following surgery, and a total inability to work.
Dr. Pettingill, an economist for appellee testified that the present value of the lost wages and medical expenses was in the range of $500,000 to $600,000, to be added to a loss of $92,000 in household services. That testimony did not include appellee's suggested figure of $700,000 for pain and suffering.
During opening statement, defense counsel stated the following, which precipitated the motion for mistrial:
Mr. Grant observes her [the plaintiff] the whole time, and his testimony in the deposition will be that Ms. Standley did not have her seat belt on, because she got out of the car and said, what is going on, big deal, you're lucky I barely tapped you, or this is no problem here. I am not injured. I am not hurt, and I didn't hit anything.
A police officer came. No citations were issued, and everybody leaves on their own merry way.
Appellee's counsel immediately objected and asked for a mistrial, which the trial court denied without prejudice and followed up with a curative instruction to the jury to disregard the existence or nonexistence of any citation.
The jury awarded gross damages of $112,000 of which $27,000 was past medical bills and $10,000 was past earnings. The trial court, in granting a new trial, stated, in part, that case law as well as the intentional nature of the material interjected, required a finding that "[i]n this case, plaintiff was prejudiced on both liability and damages because of the nature of defense counsel's argument that related the force of impact and severity of damages to the officer's failure to issue a citation."
The second paragraph of the trial court's subsequent order recited:
2. The court finds that counsel intentionally made the statement. He wanted to inform the jury that the collision was too minor to merit the issuance of a traffic citation. This information bolstered the defense position that the plaintiff could not have suffered severe injuries as a result of the minor collision.
Paragraph five of the order recited, in part:
5. Upon lengthy reflection and review of the transcript, the court is concerned that the curative instruction, hastily composed by the court, addressed the "validity of the lawsuit" and not the relationship between the issuance of a citation and the severity of the impact and injuries. *1116 The curative instruction did not suffice to the cure the prejudice.
In Royal Indemnity Co. v. Muscato, 305 So.2d 228 (Fla. 4th DCA 1974), cert. denied, 321 So.2d 76 (Fla. 1975), plaintiffs' attorney repeatedly inquired whether the driver of the float alleged to have caused injury was issued a traffic citation. This court reversed the trial court and granted a new trial, reasoning:
The problem here, as in all such cases, is to decide whether the prejudicial harm of such improper comment can be removed or cured by the judge instructing the jury to disregard the same, or whether the improper remarks fall into the classification which has been described as being "of such character that neither rebuke nor retraction may entirely destroy their sinister influence". See, Carlton v. Johns, Fla.App. 1967, 194 So.2d 670 and cases therein cited.
Common sense (and experience as well) tells us that to the average juror the decision of the investigating police officer, i.e., whether to charge one driver or the other with a traffic violation based upon the result of his investigation, is very material to, if not wholly dispositive of, that juror's determination of fault on the part of the respective drivers. An examination of the cold record in this case discloses rather clear evidence of appellee's negligence and little, if any, evidence of appellant's contributory negligence. This is not to say that such evidence would not sustain the jury's verdict. It does, however, furnish us a valid basis to conclude that under the facts of this particular case the harmful effect of counsel's improper argument was most likely not cured or removed by the court's instruction to the jury to disregard such argument.
Id. at 229 (emphasis in original). This reasoning, in our view, supports the decision of the trial court because the improper comment here was made in opening statement.
Appellants claim in their second issue that if prejudice occurred it did not effect damages; therefore a new trial should not be issued as to damages. This does not necessarily follow. If the jury was improperly prejudiced in assessing liability, it is reasonable to conclude that it assessed damages based on its faulty assessment of liability. Thus, the trial court did not err in finding that appellee was entitled to a new trial on damages as well as liability.
GLICKSTEIN, C.J., and WARNER and POLEN, JJ., concur.